### Davis v. St. Louis & S. F. Ry. Co. (Two Cases.)

*(Circuit Court, D. Kansas. December 16, 1885.)*

1. CONSOLIDATION OF CASES—FEDERAL PRACTICE.
   It is the practice in the federal courts to consolidate cases between the same parties, or between the same interests, where time, labor, and expense can be saved; but not otherwise.

2. REFERENCE—WHEN MADE.
   Where it is apparent that the examination of a long account is involved, and that much time will be consumed, a referee will be appointed to find and report the facts.

3. REMOVAL OF CAUSE—DECISION ON DEMURRER IN LOWER COURT FINAL.
   A removal of a cause from a state court to a federal court is a change of venue and not an appeal; and any ruling on a demurrer in the state court is the same as though made in the federal court.

4. TORT TO REAL ESTATE—ACTION FOR—ASSIGNMENT OF.
   Under the Kansas statute, a cause of action arising from torts to the estate is assignable

At Law.

*Blair & Perry* and *Eugene Ware*, for plaintiff.

*John O'Day*, for defendant.

BREWER, J., *(orally.)* There are two applications in these cases. One is for an order of consolidation.

It is the common practice in the federal courts to consolidate cases between the same parties, or between the same interests, wherever time, labor, and expense can be saved. For instance, if a party sues in different actions on half a dozen different notes against the same defendant, while they are separate causes of action, yet the courts are wont to consolidate them if it appears that the same questions are in issue, and that time, labor, and expense will be saved by consolidation. But they do not consolidate simply because the cases are between the same parties or upon kindred causes of action. If it is apparent from the pleadings, or otherwise, that no economy of time and labor would result from a consolidation, the courts are very apt to let the cases stand as the parties have brought them.

Now, while the defenses in these two cases are probably alike, yet the facts requiring time and labor in respect to the evidence are sep-

arate and distinct.  Each case rests on causes of action, sixteen hundred in one and two or three hundred in the other, of assignments of claims for overcharges.  While there may be no particular conflict of the testimony in reference to the fact of those alleged overcharges, yet the bulk of time and labor must be spent in proof of those separate causes; and while the several defenses set up may be the same to the two different suits, yet the time and labor required for them will be limited.

The motion to consolidate will be overruled.

In these cases a second application is made for a reference.  One side insists that there is a long account to be investigated; the other, that there are no mutual accounts, and therefore no reference permissible under the Kansas statutes.

I should have no question upon the case if the answers stated fully the defenses which are partially developed in the testimony and which were suggested in the argument; that is, that where the defendant had been paid for hauling, for instance, in one car-load, 24,000 pounds, the shipper in fact put into the car 30,000 pounds, and so did not pay full charges for the freight actually hauled, and this in a number of cases.  I am inclined to doubt, though, whether that defense thus intimated is sufficiently pleaded in the answers.  But back of all that is a fact which is obvious.  Sixteen hundred and odd claims are connected in one suit.  The items of each are small, but go to make in the aggregate quite a sum.  Each one will have to be proved separately.  It requires the examination of a long account.  Counsel say that the fact that much time will be taken is no reason for refusing a party a jury.  That is true, but at the same time, independent of the statute, I think it was the practice in the old English courts, the old common-law practice, where it was apparent that the examination of a long account was involved, to refer such account to a referee to report on the facts.  Now in this case it is obvious that it would take days, perhaps weeks, to prove, item by item, each one of these counts, and the jury at the close must largely act on the summaries of counsel or jump at conclusions; while the referee can report just the facts as to each separate count, so that the court can pass upon the law without any embarrassment, and with the facts all developed.  It seems to me that this is a case where a court may fairly exercise its power, and say that, so far as the facts are concerned, a referee shall report.  In many cases the questions of law and fact are referred; but this, to my mind, from an examination of the answer, is one of those cases where it would be fairer not to refer any question of law to the referee, but simply to ask the referee to report upon the facts of the case.

I am urged to this by one other consideration.  In conversation with my Brother FOSTER he has intimated to me that he did not see how he could fairly, in justice to other cases on the docket, try this

case at the present term. I certainly could not, with the pressure that is upon me, and I do not think the order will prejudice either party if I send the mass of facts to a referee simply to report upon the questions of fact. I think it will expedite the trial, and enable the court to more satisfactorily adjudicate the rights of the parties and neither party be wronged. So, after some consultation with him, while I do not mean to say that the case comes within the technical provisions of the statutes, I shall order a reference. You will remember, also, that notwithstanding the conformity act, which says that the practice in law cases in federal courts shall conform as near as may be to the practice in the state courts, yet the supreme court in two cases has decided that the provisions of state statutes which tend to hamper courts in a trial are not obligatory upon the federal courts. One of those provisions which was brought to my attention in Kansas City was a provision that the court must charge the jury in writing. Another was where the state statute required that separate issues of fact must be submitted to a jury. The supreme court held that these simply hamper the court in the trial, and are not binding on a federal court.

I shall make an order of reference, and direct the referee to report at the next term, so that there will be no delay. If counsel can agree upon a referee in the vicinity of these transactions, he will be appointed; if not, I shall appoint one at a distance from those places,—one whom I am satisfied will have no connection with or sympathies or prejudices for or against either party. I shall defer naming the referee until the parties have had time to confer.

In numbers 179 and 180, between the same parties, in the forepart of the week, by leave of my Brother FOSTER, the answers were withdrawn and demurrers filed. On an examination of the record it appears that these cases were transferred from the district court of Crawford county; that demurrers raising the same questions were presented to that court, argued, and overruled. Counsel in the first instance start with the proposition that this court is an appellate court, and that a decision made by a state court from which a case is removed has no more force than the opinion of an inferior court when taken to a superior court. I dissent most emphatically from that view. The removal of a case from a state to a federal court means no appeal. It is simply a change of venue. The decision on a demurrer in that court is the decision in this court, and should be regarded just the same as though the demurrer had been presented to one of the judges of this court and by him passed upon. Every right which a party has acquired in a state court, by attachment, by injunction,—every proceeding which has been initiated and consummated there,—stands in full force and operative between the parties just the same as though it had been initiated and consummated in this court. So that there is no appeal or review from the decision of

a state court when a case is removed to this. It stands exactly as though a demurrer had been considered and ruled upon by myself at a prior term. Counsel now ask a rehearing upon that demurrer. Under these circumstances the rule is settled that a demurrer once decided establishes the law in the case, and upon which the parties have a right to rely. I do not mean to say that there is such a cast-iron rule in this matter that if I, for instance, have decided a question upon demurrer and prior to the trial, or at the trial, the question is re-presented under such circumstances as satisfies me that I have made a mistake, I cannot change or correct the error. The old practice at common law, and which still obtains in the federal courts, is that no case can be taken up to the appellate court until final decree or judgment.

One reason, as given in the books, is that all rulings on motions, demurrers, etc., are subject to re-examination and correction up to the time that the final judgment is entered. And so, whenever counsel of the character and standing of the counsel for the defendant in this case come to me and say that the ruling heretofore made on demurrer, whether by a state court or myself, is in their judgment clearly wrong, I shall never hesitate to hear them, and if I am satisfied a mistake has been made, correct it.

I have examined the question as a new question, and I am satisfied that the decision of the state court is right; and for that reason the demurrer ought to be overruled. The cause of action alleged is one of this nature: that the defendant, by reason of its withholding the facilities in its possession for hauling freight, destroyed the value of the property and business of plaintiff's assignor. This is put in two or three forms. In other words, plaintiff says that the defendant neglected its duty, and by its neglect the property of his assignor suffered damage; and the claim is that such cause of action in favor of the assignor is one of tort and not assignable. It is not a tort to the person. It is a tort which resulted, as alleged, injuriously to the estate. Such a tort, it seems to me, under our Kansas statutes, is assignable. Section 26 of the Code says:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section twenty-eight; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract."

I do not think that cuts any figure in the case whatever. It neither gives nor withholds the power to assign. It simply says that this section shall not affect it. It does not authorize, it does not grant, the power to assign, nor does it withhold it. Refusing authority to do an act is by no means the equivalent of the prohibition of the act.

Section 420 provides that "in addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit

or fraud, shall also survive." Unquestionably this cause of action in favor of an individual would survive.

Mr. Pomeroy, in his work on Remedies and Remedial Rights, after referring to other matters, says:

"It is fully established, by a complete unanimity in the decisions, that causes of action which survive and pass to the personal representatives of a decedent as assets, or continue as liabilities against such representatives, are in general assignable; while those causes of action which do not thus survive are not assignable."

Then, after referring to what causes of action survive:

"The statutes in most if not all the states have changed this ancient rule, and have greatly enlarged the class of things in action which survive. It is now the general American doctrine that all causes of action arising from torts to property, real or personal,—injuries to the estate by which its value is diminished,—do survive and go to the executor or administrator as assets in his hands. As a consequence, such things in action, although based upon a tort, are assignable."

Our own supreme court, in *Stewart* v. *Balderston*, 10 Kan. 140, after referring to certain kinds of tort, says, Mr. Justice VALENTINE writing the opinion:

"And according to many of the authorities which we have already cited this is conclusive proof that the cause of action is assignable. As long ago as 1828 it was said in the case of *Comegys* v. *Vasse*, 1 Pet. 213, Mr. Justice STORY delivering the opinion of the court, that 'in general it may be affirmed that mere personal torts, which die with the party, and do not survive to his personal representatives, are not capable of passing by assignment; and that vested rights, *ad rem* and *in re*, possibilities coupled with an interest, and claims growing out of and adhering to property, may pass by assignment.' And this doctrine has been generally followed in this country ever since. It is now generally said that survivorship of a cause of action, and assignment, go hand in hand."

The cases cited in 20 Kan. do not seem to me to touch upon this action. In *Tightmeyer* v. *Mongold*, 20 Kan. 90, the question was whether the matter was in tort or in contract, and it was held, if I remember right, that part of it was in tort; but there was nothing said about the power to assign. The question of assignment was not presented in the other case, (*Fanson* v. *Linsley*, Id. 235;) the question was as to when a cause of action which sounds in tort can, at the volition of the party, be changed to an action upon an implied contract. But there was no question of assignment there. The simple question was as to set-off. There is no case that I know of which departs from the rule suggested in the case of *Stewart* v. *Balderston*.

Both upon the fact of the cases having already been decided, and because I believe the decision is right, the demurrer will be overruled.